# 22-1749

*To Be Argued By*:
RYAN B. FINKEL

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

### Docket No. 22-1749

UNITED STATES OF AMERICA,

*Appellee*,

—v.—

SETH ANDREW, also known as Sealed Defendant 1,

*Defendant-Appellant*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR THE UNITED STATES OF AMERICA

DAMIAN WILLIAMS,
*United States Attorney for the Southern District of New York,
Attorney for the United States of America*.
One St. Andrew's Plaza
New York, New York 10007
(212) 637-2200

RYAN B. FINKEL,
NATHAN REHN,
  *Assistant United States Attorneys*,
    *Of Counsel*.

## TABLE OF CONTENTS

                                                        PAGE

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.   The Offense Conduct . . . . . . . . . . . . . . . . . . 2

    B.   The Arrest, Plea Agreement, and Guilty Plea . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    C.   The Sentencing Proceeding . . . . . . . . . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Andrew Was Convicted of Property Fraud and Not on a Right-To-Control Theory . . . . . . . . . . . . . . . . . . 8

    A.   Applicable Law . . . . . . . . . . . . . . . . . . . . . . . 9

    B.   Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . 10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## TABLE OF AUTHORITIES

*Cases*:

*Ciminelli v. United States*,
    598 U.S. 306 (2023). . . . . . . . . . . . . . . . . . . . . . 9, 11

*Puckett v. United States*,
    556 F.3d 129 (2d Cir. 2009) . . . . . . . . . . . . . . . . . 10

*Sec. & Exch. Comm'n v. Govil*,
    86 F.4th 89 (2d Cir. 2023) . . . . . . . . . . . . . . . . . . 12

PAGE

*United States v. Dussard*,
   967 F.3d 149 (2d Cir. 2020) . . . . . . . . . . . . . . . . . 10

*United States v. Griffin*,
   76 F.4th 724 (7th Cir. 2023). . . . . . . . . . . . . . 13, 14

*United States v. Hirsch*,
   239 F.3d 221 (2d Cir. 2001) . . . . . . . . . . . . . . . . . 15

*United States v. Kousisis*,
   82 F.4th 230 (3d Cir. 2023) . . . . . . . . . . . . . . . . . 13

*United States v. Le*,
   902 F.3d 104 (2d Cir. 2018) . . . . . . . . . . . . . . . . . 10

*United States v. Moore*,
   975 F.3d 84 (2d Cir. 2020) . . . . . . . . . . . . . . . . . . 10

*United States v. Porat*,
   76 F.4th 213 (3d Cir. 2023) . . . . . . . . . . . . . . . . . 13

*United States v. Shih*,
   73 F.4th 1077 (9th Cir. 2023). . . . . . . . . . . . . . . . . 9

*United States v. Villafuerte*,
   502 F.3d 204 (2d Cir. 2007) . . . . . . . . . . . . . . . . . 10

*Statutes & Rules:*

18 U.S.C. §§ 1343 . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8, 9

Fed. R. Crim. P. 52(b). . . . . . . . . . . . . . . . . . . . . . . . 10

United States Court of Appeals
FOR THE SECOND CIRCUIT
Docket No. 22-1749

UNITED STATES OF AMERICA,

*Appellee,*

—v.—

SETH ANDREW, also known as Sealed Defendant 1,

*Defendant-Appellant.*

**BRIEF FOR THE UNITED STATES OF AMERICA**

**Preliminary Statement**

Seth Andrew appeals from a judgment of conviction entered on July 29, 2022, in the United States District Court for the Southern District of New York, by the Honorable John P. Cronan, United States District Judge, following Andrew's guilty plea.

On January 14, 2022, Information 22 Cr. 32 (JPC) (the "Information") was filed, charging Andrew with a single count of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2. That same day, Andrew pleaded guilty before Judge Cronan to the sole count of the Information, pursuant to a plea agreement with the Government. On July 28, 2022, Judge Cronan sentenced

2

Andrew principally to 366 days' imprisonment. Judgment was entered the next day.

On August 11, 2022, Andrew filed a notice of appeal. On May 16, 2023, the Government moved to dismiss Andrew's appeal. On October 31, 2023, this Court granted the Government's motion to dismiss to the extent Andrew challenges his sentence and his claim that the Government made a belated *Brady* disclosure. (App. Dkt. 119).[1] This Court denied the Government's motion to the extent that Andrew challenges his conviction.

Andrew completed his term of incarceration at a halfway house and, according to the Bureau of Prisons website, was released on May 15, 2023.

**Statement of Facts**

**A. The Offense Conduct**

Democracy Prep Public Schools ("DPPS" or "Democracy Prep") is a series of charter schools based in

---

[1] "App. Dkt." Refers to an entry on this Court's docket in this case; "PSR" or "Presentence Report" refers to the Presentence Investigation Report prepared by the United States Probation Office (the "Probation Office") in connection with Andrew's sentencing; "Dkt." refers to an entry on the District Court's docket in this case; and "Br." refers to Andrew's brief on appeal. Unless otherwise noted, quotations omit internal quotation marks, citations, footnotes, and previous alterations.

3

New York City that focuses on providing educational opportunities to underserved communities. (PSR ¶ 9). Andrew founded the first Democracy Prep school in 2005, becoming its superintendent and thereafter the *de facto* leader of DPPS. In October 2012, Andrew announced he was leaving Democracy Prep to begin work promoting another non-profit, Democracy Builders. (PSR ¶ 13). The formal relationship between Andrew and Democracy Prep officially ceased in January 2017. Andrew's Democracy Prep email account was left active only so that Andrew could have any emails sent to him at that address forwarded to his Democracy Builders account. (PSR ¶ 20).

The New York State Board of Regents requires charter schools to maintain an escrow account containing $75,000 that can be accessed only for certain reasons, such as to cover expenses should the school dissolve. (PSR ¶ 22). Failure to maintain an escrow account could threaten a charter school's status as a school authorized by the Board of Regents. Indeed, the agreement between a Democracy Prep charter school and the Board of Regents provided that failure to maintain the escrow account would be considered a "material" violation of the charter agreement. (PSR ¶ 22). Andrew was the signatory of that agreement, and thus was aware of the importance of the escrow accounts. (PSR ¶ 22).

On March 5, 2009, March 8, 2011, and March 26, 2013, Democracy Prep opened escrow accounts for Democracy Preparatory Charter School, Democracy Preparatory Harlem Charter School, and Democracy Preparatory Endurance Charter School, respectively. (*See*

4

PSR ¶¶ 22-26). Andrew was identified in the opening paperwork for each of those three accounts. (PSR ¶¶ 22-26). The funding for the escrow accounts was provided by the public—specifically, the New York City Department of Education. (PSR ¶ 27). As explained above, these accounts were established pursuant to the Board of Regents charter school requirements. They were essential to ensure that each of the schools fulfilled its charter agreement obligations and, according to a former executive of Democracy Prep, were "not to be touched at all and there should be no money movements" from them. (PSR ¶ 27).

On March 28, 2019—two years after the termination of his affiliation with Democracy Prep—Andrew went in person to a bank in Manhattan ("Bank-1") and, without authorization from any Democracy Prep employee or officer, closed the escrow accounts for two of the Democracy Prep charter schools. (PSR ¶¶ 28-29). Andrew was able to do this because his name had not been removed as an authorized signatory for the escrow accounts when his affiliation with Democracy Prep had ended. The bank provided him two checks representing the liquidated escrow accounts—one made out to Democracy Preparatory Charter School in the amount of $71,870.60 and a second check made out to Democracy Preparatory Harlem Charter in the amount of $70,642.98. (PSR ¶¶ 28-29).

The same day that he closed those two escrow accounts, Andrew went to a different bank ("Bank-2") in Manhattan and opened a bank account in the name of Democracy Preparatory Charter School ("Fraud Account-1"), but provided the address of his new

5

organization, Democracy Builders. (PSR ¶¶ 30-31). To falsely demonstrate to Bank-2 that Andrew was still an executive of Democracy Preparatory Charter School, Andrew forwarded an email from his Democracy Prep email account to a Bank-2 employee, who opened the bank account for Andrew. That email contained Democracy Preparatory Charter School's by-laws, certificate of incorporation, registration statement, and a document from the IRS. (PSR ¶¶ 32-33). Andrew used these documents to substantiate his false claim to be the "Key Executive with Control" of the charter school. (PSR ¶¶ 31, 34). Upon opening the account, Andrew deposited into Fraud Account-1 the check from Bank-1 made out to Democracy Preparatory Charter School. A few days later, Andrew deposited the second check he had fraudulently obtained, the check payable to Democracy Preparatory Harlem Charter, into Fraud Account-1 as well. (PSR ¶ 37).

Approximately six months later, on October 17, 2019, Andrew returned to a Bank-1 branch and, without receiving authorization from any Democracy Prep employee or officer, closed out a third Democracy Prep escrow account. (PSR ¶ 38). Again, Andrew was able to do this because he was still named as a signatory in the account's opening documentation. Upon closing the account, Bank-1 provided Andrew a check made out to Democracy Preparatory Endurance in the amount of $75,481.10. (PSR ¶ 38).

On October 21, 2019, Andrew opened a bank account ("Fraud Account-2") at a third bank ("Bank-3") in the name of Democracy Builders Fund Inc., the nonprofit entity under his control. (PSR ¶ 39). That same

6

day, Andrew deposited the fraudulently obtained check from the Democracy Preparatory Endurance escrow account into Fraud Account-2. (PSR ¶ 39).

On November 19, 2019, Andrew closed Fraud Account-1 and obtained a check in the amount of $144,473.29 made out to Democracy Prep Charter School, which represented the total amount of stolen escrow funds from the first two Democracy Prep schools. (PSR ¶ 40). Andrew attempted to deposit that check into Fraud Account-2, but was unable to do so because Fraud Account-2 was in the name of Democracy Builders Fund. To solve this problem, Andrew returned to Bank-2 and obtained a new check, which was made payable to Democracy Builders Fund. (PSR ¶ 40). On November 19, 2019, Andrew successfully deposited this new check into Fraud Account-2.

The next day, Andrew transferred the proceeds from Fraud Account-2—approximately $210,000—into a certificate of deposit held by Bank-3. (PSR ¶ 41). When the certificate of deposit matured in May 2020, Andrew transferred the funds, which represented the proceeds of the stolen escrow funds, to a Democracy Builders operating account. (PSR ¶ 42). The next day, Andrew made a $225,000 transfer out of the Democracy Builders operating account as a down payment for property Democracy Builders purchased in Vermont. (Dkt. 43 at 5). Though the Democracy Builders operating account had sufficient assets to otherwise cover the $225,000 transfer, the timing of the transfers indicates the stolen funds were used by Andrew to fund this down payment. (Dkt. 43 at 5).

7

### B. The Arrest, Plea Agreement, and Guilty Plea

Andrew was arrested on April 27, 2021 pursuant to a criminal complaint, which charged him with wire fraud, money laundering, and making false statements to a bank. On January 14, 2022, the Government filed the Information and Andrew pleaded guilty, pursuant to a written plea agreement with the Government, to Count One of the Information. (Dkt. 30).

The Information alleged that Andrew "stole approximately $218,005 belonging to charter schools, and in connection therewith and in furtherance thereof, Andrew transmitted and caused to be transmitted over interstate wires emails necessary to implement his scheme, including emails transmitted through the Southern District of New York." (Dkt. 26 at 1-2).

In his plea allocution, Andrew stated:

> In March, April, and October of 2019, I transferred funds from three dissolution accounts associated with the Democracy Prep network to other bank accounts that I opened. I ultimately transferred those funds into the account of another non-profit, Democracy Builders Fund. I transferred the funds to the Democracy Builders Fund without the written authorization of DPPS. I sent emails in order to facilitate the account opening and transfer of funds. I represented to bank employees that I was authorized to transfer these

> funds. I'm truly sorry for what I have done.

(Dkt. 30 at 32-33).

Andrew further acknowledged that when he "represented that [he] had authorization to bank officials to transfer the funds, [he knew] that [he] did not, in fact, have that authorization." (Dkt. 30 at 36).

### C. The Sentencing Proceeding

Andrew appeared for sentencing on July 28, 2022. At the sentencing, Andrew stated that his "actions caused harm to Democracy Prep public schools in ways that I deeply regret." (Dkt. 51 at 34). Andrew continued that he was "solely accountable for the decision to transfer the funds the government identified." (*Id.*).

After hearing from the parties, Judge Cronan calculated the United States Sentencing Guidelines Range to be 21 to 27 months' imprisonment, the same range agreed to by the parties in the plea agreement and calculated by the Probation Office in the Presentence Report. Judge Cronan then sentenced Andrew to a below-Guidelines term of 366 days' imprisonment. (Dkt. 51 at 47-49). This appeal followed.

## ARGUMENT

### Andrew Was Convicted of Property Fraud and Not on a Right-To-Control Theory

Andrew argues that his conviction should be vacated in light of the Supreme Court's rejection of the right-to-control theory of wire fraud in *Ciminelli v.*

9

*United States*. But Andrew was not charged or convicted on the right-to-control theory, which was never mentioned in the Information, the plea proceeding, or at any other point in this case. On the contrary, Andrew's conduct was a scheme to deprive his victim of money, a traditional property interest, and his conviction is not affected by the Supreme Court's holding in *Ciminelli*.

### A. Applicable Law

"The wire fraud statute criminalizes 'scheme[s] or artifice[s] to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.'" *Ciminelli v. United States*, 598 U.S. 306, 312 (2023) (quoting 18 U.S.C. § 1343). For a conviction under the wire fraud statute, "the Government must prove not only that wire fraud defendants engaged in deception, but also that money or property was an object of their fraud." *Id.* In *Ciminelli*, the Supreme Court held that the wire fraud statutes cover "traditional property interests" and that the "right to valuable economic information needed to make discretionary economic decisions is not a traditional property interest." *Id.* at 316. Of course, *Ciminelli* did not abrogate the language of the wire fraud statute, which lists "money" as a property interest that an individual may not seek to obtain "by means of false or fraudulent pretenses." 18 U.S.C. § 1343. *Ciminelli* just limits the scope of the term "other property" in the statute, and confirms that "other property" must be a traditional property interest. *See United States v. Shih*, 73 F.4th 1077, 1101 (9th Cir. 2023) (declaring post-*Ciminelli* that "depriv[ation] of confidential

10

information, [is] a cognizable property interest under the mail and wire fraud statutes").

Where, as here, the appellant did not raise his statutory arguments below, this Court reviews the claim for plain error. *See* Fed. R. Crim. P. 52(b); *United States v. Le*, 902 F.3d 104, 109 (2d Cir. 2018) (unpreserved claim that criminal statute did not cover defendant's conduct is reviewed for plain error). That standard requires an appellant to demonstrate that: "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Moore*, 975 F.3d 84, 90 (2d Cir. 2020). "[R]eversal for plain error should be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." *United States v. Villafuerte*, 502 F.3d 204, 209 (2d Cir. 2007); *see also Puckett v. United States*, 556 F.3d 129, 135 (2d Cir. 2009) ("Meeting all four prongs is difficult, as it should be."). The burden of establishing plain error is on the appellant. *United States v. Dussard*, 967 F.3d 149, 155 (2d Cir. 2020).

**B. Discussion**

There was no error, much less plain error, in Andrew's conviction. Andrew is guilty of violating the wire fraud statute because he employed false and fraudulent representations to obtain money—more than $200,000—from his victim, Democracy Prep. Indeed, the Information, to which Andrew pleaded guilty, charged that Andrew "stole approximately

11

$218,005 belonging to charter schools," and that this theft occurred "by means of false and fraudulent pretenses." (Dkt. 26 at 1-2). Unlike in *Ciminelli*, the operative charging document did not charge a right-to-control theory and the Government never operated under the guise of one. *See Ciminelli*, 598 U.S. at 310 ("The Government's indictment and trial strategy rested solely on th[e right-to-control] theory").

The plea transcript provides further confirmation that the Government was not proceeding on a right-to-control theory, and also demonstrates that Andrew admitted to executing a fraudulent scheme to obtain money. First, the District Court asked the Government to list the elements of the crime that it would be required to prove at trial. For the first element, the Government stated that it would have to prove beyond a reasonable doubt that "the defendant devised a scheme to defraud or obtain money or property by using materially false or fraudulent pretenses." (Dkt. 30 at 20). Unlike in *Ciminelli*, the Government did not assert that the scheme could include a right to obtain any intangible interests. *See Ciminelli*, 598 U.S. at 311 (noting that the trial court had instructed the jury that the term "property" in Section 1343 could include "intangible interests such as the right to control the use of one's assets").

Then, in his plea allocution, Andrew admitted that when he had "represented that [he] had authorization to bank officials to transfer [Democracy Prep's] funds, [he knew] that [he] did not, in fact, have that authorization." (Dkt. 30 at 36). Andrew made those false representations to the banks so that he could transfer

12

money from the victim, "the Democracy Prep network to other bank accounts that [he] opened." (Dkt. 30 at 33). At sentencing, Andrew again confirmed that his "actions caused harm to Democracy Prep public schools . . . . [and that he was] solely accountable for the decision to transfer the funds the government identified." (Dkt. 51 at 34). That is, because of his false statements, Andrew deprived Democracy Prep of its "funds"—*i.e.* money. Nothing in *Ciminelli* suggests that Andrew's conduct, as he himself described it, is not criminalized by the wire fraud statute.

Though limited, this Court's decisions since *Ciminelli* confirm that Andrew's conduct, which was aimed at obtaining Democracy's Prep's money, remains a crime. In a civil case, this Court interpreted *Ciminelli* to preclude fraud prosecutions where the conduct was "mere deception without harm to property rights." *Sec. & Exch. Comm'n v. Govil*, 86 F.4th 89, 105 (2d Cir. 2023). In *Govil*, this Court held that the district court had erred when it did not consider whether a victim suffered "pecuniary harm" when calculating disgorgement. *Id.* Here, by contrast, there was direct harm to a pecuniary interest: Andrew stole more than $200,000 from bank accounts belonging to Democracy Prep, and wired that money to bank accounts that he controlled. Judge Cronan recognized this pecuniary harm and ordered restitution as part of the sentence in the case; indeed, Andrew himself recognized that pecuniary harm because he paid that restitution prior to sentencing. (Dkt. 51 at 51).

Cases from other circuits provide further support for the conclusion that *Ciminelli* does not disturb a

13

wire fraud conviction where the defendant fraudulently obtains money. In *United States v. Porat*, the Third Circuit affirmed the conviction of a defendant who lied about a college's ranking. The defendant, relying on *Ciminelli*, argued there was no deprivation of a property right because he lied about rankings, which is not a property right. The Third Circuit rejected that contention. The defendant "was not convicted on the theory that he deprived students of rankings; he was convicted for depriving them of *tuition money*." *United States v. Porat*, 76 F.4th 213, 219 (3d Cir. 2023). Where "money was an object of [a defendant's] scheme," it is criminalized by the wire fraud statute. *Id.* at 220; *see also United States v. Kousisis*, 82 F.4th 230, 240 n. 63 (3d Cir. 2023) (*Ciminelli* does not bar prosecution where money is target of fraudulent scheme).

Similarly, when analyzing *Ciminelli* the Seventh Circuit confirmed that "a successful prosecution under the wire fraud statute requires the Government to prove that the defendants had engaged in a deception *and* that the object of their fraud was money or property." *United States v. Griffin*, 76 F.4th 724, 738 (7th Cir. 2023). In *Griffin*, the Seventh Circuit affirmed a conviction of conspiracy to commit wire fraud where "defendants attempt[ed] to deprive the SBA of loan guarantees and the millions of dollars the SBA lost paying out on these loan guarantees." *Id.* That is, the defendants provided false information to deceive the SBA into providing loan guarantees, which caused the SBA to provide money "that would not have been granted if the true facts had been made known." *Id.* at 739. Because the guarantees amounted to a payment

14

of money, the court declared they "are most certainly 'property' as required by the wire fraud statute." *Id*.

Andrew's arguments simply misunderstand *Ciminelli*'s applicability to this case. *First*, even if it were true that Andrew did not "receive or spend" the money he stole, it is of no moment. (Br. 5; *see also* Br. 9). All that is necessary to sustain the conviction is that, as the Government charged and the defendant admitted in his guilty plea, money was the target of the fraudulent scheme. In any event, Andrew did obtain Democracy Prep's money and he used that money to further the interests of Democracy Builders, an entity under Andrew's control, by placing the stolen funds in an operating account and then using that account to make a down payment on a property in Vermont. (*See* Dkt. 43 at 5). Just because Andrew did not spend the money he stole on lavish gifts for himself is irrelevant to whether his conduct violated the wire fraud statute.

Next, Andrew attempts to argue that Democracy Prep only suffered mere "political 'harm'" (Br. 6) or "reputational 'harm'" (Br. 7). That argument misstates the facts. As discussed above, Andrew committed fraud to obtain money from Democracy Prep's escrow accounts, and did in fact obtain those funds by means of his false statements to multiple banks. (PSR ¶ 22). Indeed, as part of his sentence Andrew agreed to pay restitution to compensate Democracy Prep for the money he had unlawfully taken. (Br. 3). To be sure, as Judge Cronan recognized at sentencing, Andrew's crime also had "the potential to cause harm to that victim, Democracy Prep Public Schools, beyond just depriving the three individual schools of their funds."

(Dkt. 51 at 42). That potential additional harm included the risk that Democracy Prep might be in breach of New York's requirements for charter schools, as well as the "impact on that school network's name and reputation" due to the fact that its founder had committed this financial fraud. (Dkt. 51 at 43). But Andrew's suggestion that these additional harms somehow cast doubt on his wire fraud conviction is meritless. There is nothing unusual about a fraud victim suffering additional harm on top of the financial harm caused by the fraud, and this does not negate that Andrew's scheme was aimed at obtaining money from the schools' escrow accounts.

Andrew also contends that he had the "right to control" the funds in the escrow account because he was still named as a signatory on the account. (Br. 8-9). Those arguments are flatly contrary to what Andrew said in pleading guilty to these offenses, where he acknowledged that when he made the transfers, he knew that he did not have the authorization to do so. (Dkt. 30 at 36). A defendant cannot obtain vacatur of his conviction merely by making factual assertions that "simply contradict what he said at his plea allocution," and Andrew's attempts to do so here should be rejected. *See United States v. Hirsch*, 239 F.3d 221, 225 (2d Cir. 2001).[2] Likewise, Andrew's brief on appeal airs

---

[2] *Hirsch* arose in the context of a motion to withdraw a guilty plea, but its reasoning on this point applies just as well to a defendant's attempt to contradict his plea allocution to seek vacatur of his conviction on appeal.

at length his grievances with Democracy Prep, in an apparent attempt to argue that the schools were not really harmed when he fraudulently took the funds from their escrow accounts. (Br. 11-13). Those arguments are contrary to what Andrew himself acknowledged at sentencing, when he stated that his "actions caused harm to Democracy Prep Public Schools" and that he "deeply regret[ted]" his conduct and "especially [did] not blame the victim." (Dkt. 51 at 34). But beyond that, Andrew's self-serving accounting of his history with Democracy Prep is simply irrelevant to the legal issue raised by this appeal, which is whether Andrew's fraudulent scheme was to obtain money. His scheme was plainly aimed at obtaining the money from Democracy Prep's accounts that he did in fact obtain, despite lacking authorization to do so, and *Ciminelli* in no way affects his conviction.

## CONCLUSION

**The judgment of conviction should be affirmed.**

Dated: New York, New York
December 29, 2023

>Respectfully submitted,
>
>DAMIAN WILLIAMS,
>*United States Attorney for the*
>*Southern District of New York,*
>*Attorney for the United States*
>*of America.*

RYAN B. FINKEL,
NATHAN REHN,
  *Assistant United States Attorneys,*
       *Of Counsel.*